J-S07014-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| MANUEL ANDRES SANTANA DEL | : | |
| ROSARIO | : | |
| | : | No. 1074 MDA 2024 |
| Appellant | : | |

Appeal from the PCRA Order Entered July 12, 2024
In the Court of Common Pleas of Schuylkill County Criminal Division at
No(s):  CP-54-CR-0000320-2022

BEFORE:  NICHOLS, J., McLAUGHLIN, J., and KING, J.

MEMORANDUM BY NICHOLS, J.:                    **FILED: JULY 16, 2025**

Appellant Manuel Andres Santana Del Rosario appeals from the order denying his Post Conviction Relief Act [1] (PCRA) petition following a hearing. On appeal, Appellant argues that trial counsel was ineffective for failing to call character witnesses at trial or file a motion to suppress.  Following our review, we affirm.

A prior panel of this Court summarized the underlying facts of this matter as follows:

> The evidence at [the jury] trial included testimony from the victim Edwin Candelario.  According to Mr. Candelario, he operated a stand at Renninger's Market, a flea market-type of establishment, where he sold household goods and sports-related items. [Appellant] was a customer at the stand and, as of February 4, 2022, [Appellant] owed Candelario about $80.00 for items that he

---

[1] 42 Pa.C.S. §§ 9541-9546.

had purchased. Early that day, [Appellant] was in contact via cellphone with Candelario. [Appellant] insisted on paying Candelario $50.00 toward his debt, and that Candelario travel to [Appellant's] home to receive the money. Candelario agreed.

Candelario and his girlfriend drove to [Appellant's] home in Mahanoy City, Schuylkill County that morning, and upon arrival at the home they were met outside by [Appellant] who invited them into the home. Upon their entry into the home, [Appellant] placed $50.00 on a table for Candelario to retrieve. Candelario picked up the money and he and his girlfriend left the home. However, [Appellant] followed Candelario and his girlfriend to their vehicle where he made a comment to Candelario's girlfriend which annoyed Candelario. The latter told [Appellant] that if he needed to say something it should be said to Candelario. [Appellant] then asked Candelario to come back into his home so they could finish talking.

Candelario agreed, and he and his girlfriend re-entered [Appellant's] home, whereupon [Appellant] pulled out a gun, stuck it in Candelario's face, grabbed Candelario by the neck, and told him to sit down. Candelario sat on a couch, with his girlfriend sitting next to him. [Appellant] sat in a chair directly in front of Candelario with the gun in his hand. Candelario asked [Appellant] what the problem was, and why [Appellant] had a gun pointed at him. Candelario told [Appellant] that they could just forget "about this," and that "this never happened."

[Appellant] responded in Spanish, "Rat," and told Candelario to get on his knees. Candelario got on his knees on the floor. [Appellant] then told Candelario to put his hands on his head, which he did. Candelario was then hit on the head by [Appellant], and he fell toward his girlfriend's lap. As Candelario was trying to return to his original position, [Appellant] threw a punch at Candelario's face with his fist. Candelario blocked the punch, got up and hurried to the front door of the premises in an effort to exit the house. Candelario found that the front door was locked. As Candelario was trying to unlock the door, he was shot once in the arm and once in [the] area of the rib cage by [Appellant].

Candelario was able to escape from the house, but [Appellant] followed him to the street where, Candelario testified, [Appellant] shot at him again. Candelario ran to the Mahanoy City police station, which was located close to [Appellant's] home, and banged on the door. Chief of Police Thomas Rentscher answered

the door to the police station, saw Candelario bleeding profusely and got him inside the station where Candelario received emergency treatment, including the application of a tourniquet by the Code Enforcement Officer. Emergency medical services were summoned, and Basic and Advance Life Support personnel treated Candelario at the police station. He was subsequently life-flighted to Geisinger Medical Center where he remained as a patient for over a week. According to Candelario, he had not made any threats toward [Appellant], nor did he possess a weapon while at [Appellant's] home the day of the shooting.

Dr. Robert Garvin, a vascular surgeon at Geisinger Medical center testified that Candelario was treated surgically for a right upper extremity arterial injury, namely a radial artery tear in the forearm and hemorrhage, to control the bleeding and attempt to repair the injury to the artery. According to Dr. Garvin, the injury to the artery was serious, and without successful treatment posed a risk of death, or loss of limb or function to Candelario. Doctor Garvin determined during surgery that the artery was too damaged for the broken ends to be "brought together," so the decision was made to "tie them off." Candelario underwent several medical procedures thereafter to close the wound, and was released from the doctor's care after his last visit on March 2, 2022.

Investigating police officers who examined the scene of the shooting identified bullet strikes to the inside of the door to [Appellant's] home, and interviewed [Appellant] and his wife who had been present at the time of the shooting. [Appellant] admitted at trial that he had shot Candelario, and that he had ordered Candelario to get on his knees at gunpoint. However, [Appellant] claimed that he would not have shot Candelario if [Candelario] had allowed [Appellant] to search him for weapons, [if Candelario] had not hit [Appellant] as he was getting up from the floor when [Appellant] had the gun pointed at Candelario, or if Candelario had not reached toward his pocket as he was trying to get out of the front door. No evidence produced at trial indicated that Candelario possessed any weapon the day of the shooting.

The jury found [Appellant] guilty of the above-referenced crimes. The trial court sentenced him to seven to 15 years' incarceration for aggravated assault followed by one year of reporting probation, a consecutive sentence of one year of probation for PIC, and a concurrent term of one year of probation for REAP.

- 3 -

***Commonwealth v. Santana Del Rosario***, 1737 MDA 2022, 2023 WL 8666645, at \*1-2 (Pa. Super. filed Dec. 15, 2023) (unpublished mem.) (internal citations and footnotes omitted). On direct appeal, this Court affirmed Appellant's convictions. ***See id.*** at \*3.

Thereafter, the PCRA court explained:

[Appellant] filed a *pro se* petition on February 14, 2024. The court appointed counsel to represent [Appellant], and on May 21, 2024, his counsel filed an amended petition which was limited to one issue, namely, "(w)hether trial counsel was ineffective for failing to file a pre-trial motion questioning the voluntary nature of the [Appellant's] confession to law enforcement?" [Appellant's] Amended Petition (May 21, 2024).

At the hearing, [Appellant] waived all issues that had been raised, with the exception of that set forth in the counseled amended petition. Based on [Appellant's] argument, the court understood that [Appellant] was not only questioning the voluntary nature of the statement he had given to police following the shooting for which he had been charged. Rather, as [Appellant] claimed that an interpreter had not been provided by police during the interrogation, it appeared his complaint included the claim that the statement had not been knowingly or understandingly made due to [Appellant's] lack of competency with the English language.

\*    \*    \*

At the June 19th hearing, [Appellant] reiterated his belief that in shooting Candelario he had acted justifiably. Despite numerous requests for clarification, [Appellant] failed to offer any explanation as to how or in what instance the statement he provided to police about the circumstances of the shooting differed from his testimony at trial.[fn1] He, likewise, did not offer a legal basis, based on the elicited facts, to find that the statement given to police, if not presented in the Commonwealth's case-in-chief, could not have been used by the Commonwealth during cross-examination of [Appellant], or in rebuttal following [Appellant's] testimony at trial.[fn2] Further, [Appellant] offered no credible

- 4 -

evidence to find that he had not understood the **Miranda**[2] warnings he had received, nor that he had not knowingly, voluntarily and intelligently waived his rights to remain silent and to counsel prior to providing his statement to police.

[fn1] It is noted that [Appellant] testified at trial that he had not told police about the threat he claimed Candelario had made about returning to [Appellant's] home with other armed people.

[fn2] Notably, [Appellant] did not contend that the police coerced [Appellant] into providing the statement or otherwise applied any psychological or physical pressure upon him so as to render the statement involuntary on such grounds. **See Commonwealth v. Busanet**, 54 A.3d 35 ([Pa.] 2012) (voluntary statements obtained in violation of **Miranda** may be used to impeach testifying defendant); Pa. Const. Art. I, § 9.

Attorney Christine Holman, [Appellant's] trial counsel, who practiced criminal law since 1991, testified that she had known [Appellant] socially prior to his retaining her to represent him. She had not found that he had difficulty understanding English, and felt he had a fine grasp of the language. In preparation for trial, Attorney Holman met with [Appellant] in both her office and at his home. While together, Attorney Holman and [Appellant] reviewed the recorded police interview, and she found nothing which indicated that [Appellant's] statement had been improperly obtained. In this regard, Attorney Holman found no evidence of coercion or pressure by police or any other impropriety. Attorney Holman testified that the police had given [Appellant] the **Miranda** warnings in both English and Spanish.[fn3]

[fn3] State Police Trooper Nicholas Reese testified similarly at trial.

According to Attorney Holman, the version of the events of the shooting as told by [Appellant] to police was similar to that he had offered in his testimony at trial. Further, she stated [Appellant] had not been compelled to testify at trial because the Commonwealth presented the recording of the police interview with [Appellant] as part of its case-in-chief. Rather, according to

---

2 **Miranda v. Arizona**, 384 U.S. 436 (1966).

Attorney Holman, [Appellant] was always going to testify to support his claim of having acted in self-defense.[fn4]

> [fn4] Following the receipt of testimony at the June 19, 2024 hearing, [Appellant] insisted on his reading to the court a two-page statement that he had prepared in English without the assistance of the interpreter who had been present and provided interpretation throughout the hearing. [Appellant] had also been provided an interpreter during prior judicial proceedings.

PCRA Ct. Order & Op., 7/12/24, at 1-2, 6-7.

Ultimately, the PCRA court issued an order and opinion denying Appellant's PCRA petition. *See id.* at 1-9. Appellant subsequently filed a timely notice of appeal and a court-ordered Pa.R.A.P. 1925(b) statement. The PCRA court issued a Rule 1925(a) opinion adopting the reasoning set forth in its July 12, 2024 order and opinion and addressing an additional claim included in Appellant's Rule 1925(b) statement. *See* PCRA Ct. Op., 8/22/24.

On appeal, Appellant raises the following issues, which we have reordered as follows:

1. Whether trial counsel was ineffective for failing to call character witnesses during [] Appellant's trial?

2. Whether trial counsel was ineffective for failing to file a pre-trial motion seeking to suppress [] Appellant's pre-arrest confession?

Appellant's Brief at 3.

In reviewing the denial of a PCRA petition, our standard of review:

is limited to examining whether the PCRA court's determination is supported by the evidence of record and whether it is free of legal error. The PCRA court's credibility determinations, when supported by the record, are binding on this Court; however, we

apply a *de novo* standard of review to the PCRA court's legal conclusions.

Furthermore, to establish a claim of ineffective assistance of counsel, a defendant must show, by a preponderance of the evidence, ineffective assistance of counsel which, in the circumstances of the particular case, so undermined the truth-determining process that no reliable adjudication of guilt or innocence could have taken place. The burden is on the defendant to prove all three of the following prongs: (1) the underlying claim is of arguable merit; (2) that counsel had no reasonable strategic basis for his or her action or inaction; and (3) but for the errors and omissions of counsel, there is a reasonable probability that the outcome of the proceedings would have been different.

\* \* \*

Boilerplate allegations and bald assertions of no reasonable basis and/or ensuing prejudice cannot satisfy a petitioner's burden to prove that counsel was ineffective. Moreover, a failure to satisfy any prong of the ineffectiveness test requires rejection of the claim of ineffectiveness.

*Commonwealth v. Sandusky*, 203 A.3d 1033, 1043-44 (Pa. Super. 2019) (citations and quotations omitted and formatting altered). Additionally, "[c]ounsel cannot be found ineffective for failing to pursue a baseless or meritless claim." *Commonwealth v. Davis*, 262 A.3d 589, 596 (Pa. Super. 2021) (citation omitted).

**Failure to Call Character Witnesses**

In his first issue, Appellant argues that trial counsel was ineffective for failing to call character witnesses at trial. Appellant's Brief at 13.

Initially, we note that "[a]ny claim not raised in the PCRA petition is waived and not cognizable on appeal." *Commonwealth v. Washington*, 927 A.2d 586, 601 (Pa. 2007); Pa.R.A.P. 302(a) (stating that "[i]ssues not

raised in the [lower] court are waived and cannot be raised for the first time on appeal").

Here, the PCRA court addressed Appellant's claim as follows:

With respect to the issue of trial counsel's alleged ineffectiveness in failing to present character witness testimony, it is noted that at the June 19, 2024 [PCRA] hearing, [PCRA] counsel initially informed the court that he was only pursuing the suppression issue, and, at the end of the hearing posed no objection to the court's having considered all other issues waived. [N.T. PCRA Hr'g, 6/19/24, at 5, 45]. Further, at the aforesaid hearing, [Appellant] presented no evidence in support of his current character witness complaint. Consequently, the issue has been waived. Pa.R.A.P. 302(a) (issue not raised in trial court waived, and cannot be raised first time on appeal).

As a result, it is not known who, if anyone, [Appellant] could have presented at trial to offer such testimony, if such person(s) would have been available and willing to offer character testimony at trial, or if any such alleged evidence would have qualified as character evidence, and been admissible as such.[fn5] Because the issue was waived, and [Appellant] did not attempt to meet the evidentiary burden of proof necessary to establish ineffectiveness of trial counsel on these grounds, it is not possible for this court to address the matter with a substantive analysis. ***See also Commonwealth v. Dennis***, 17 A.3d 297 (Pa. 2011) ([stating that to find counsel ineffective for failing to call a witness at trial a PCRA petitioner must prove that the witness existed, was available and willing to testify for defendant, that counsel knew or should have known the witness existed, and that the absence of the witness' testimony was so prejudicial to have denied defendant a fair trial]).

> [fn5] It is also noted that neither [Appellant's] initial *pro se* petition filed on February 14, 2024, nor his counseled amended petition filed on May 21, 2024, identified any trial witness complaint regarding his own character which he proposed to present at the [PCRA] hearing, indicated that any such witness had been available and willing to testify at his trial, etc. Rather, in [Appellant's] initial filing he only complained about the alleged character of the victim. ***See*** Pa.R.Crim.P. 920 (A)-(B) ([PCRA petition] to include, *inter*

> *alia*, grounds for relief, facts supporting those grounds, together with identity of each witness and substance of their testimony); 42 Pa.C.S. § 9543 ([PCRA] petitioner must plead and prove by preponderance of evidence grounds for relief).

PCRA Ct. Op., 8/22/24, at 2-3 (some formatting altered).

Following our review of the record, we discern no error in the PCRA court's conclusion. *See Sandusky*, 203 A.3d at 1043-44. The record confirms that Appellant failed to raise any issue regarding character witnesses in his PCRA petition or at the PCRA hearing. Therefore, we cannot consider his claim on appeal. *See* Pa.R.A.P. 302(a); *see also Washington*, 927 A.2d at 601. Accordingly, Appellant is not entitled to relief on this claim.

### Pre-Trial Motion to Suppress

In his remaining issue, Appellant argues that trial counsel was ineffective for failing to file a pre-trial motion seeking to suppress Appellant's "statements made during his pre-arrest interview due to the language barriers between the prosecuting officers and [] Appellant." Appellant's Brief at 11-12. In support, Appellant explains that the lead investigator was not proficient in Spanish and failed to request an interpreter, despite the fact that the trial court "felt it was necessary to have two [] translators present during the jury trial." *Id*. Therefore, Appellant concludes that trial counsel was ineffective for failing to file a pre-trial motion to suppress. *Id.* at 12.

This Court has explained:

> The Rules of Appellate Procedure require that appellants adequately develop each issue raised with discussion of pertinent facts and pertinent authority. *See* Pa.R.A.P. 2119. It is not this

Court's responsibility to comb through the record seeking the factual underpinnings of an appellant's claim. Further, this Court will not become counsel for an appellant and develop arguments on an appellant's behalf.

***Commonwealth v. Samuel***, 102 A.3d 1001, 1005 (Pa. Super. 2014) (some citations omitted). When an appellant fails to present an adequately developed argument in an appellate brief, this Court may find that issue waived. ***See id.***

Here, Appellant fails to explain why trial counsel lacked a reasonable basis for failing to file a pre-trial motion to suppression or why there is a reasonable probability that if trial counsel had done so, Appellant would have been entitled to relief. ***See Sandusky***, 203 A.3d at 1043-44. Appellant's boilerplate discussion merely states that trial counsel never challenged Appellant's pre-arrest statement to police with no supporting argument or legal authority. ***See*** Appellant's Brief at 11-12. Because Appellant has failed to develop his argument supporting the reasonable basis and prejudice prongs of the ineffectiveness standard, we conclude that Appellant has waived this claim, and that he is not entitled to relief.[3] ***See Sandusky***, 203 A.3d at 1043-44.

Order affirmed. Jurisdiction relinquished.

---

[3] In any event, the PCRA court addressed Appellant's claim and concluded that he was not entitled to relief. ***See*** PCRA Ct. Order & Op., 7/12/24, at 8-9. Therefore, even if Appellant properly developed this claim on appeal, we would affirm based on the PCRA court's analysis of this issue.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary


Date: 7/16/2025